**Affirmed as Modified, Remanded, and Opinion filed November 19, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00057-CV

## SPX CORPORATION, DOING BUSINESS AS SPX FLOW TECHNOLOGY, Appellant

### V.

## ROLAND ALTINGER, IN HIS OFFICIAL CAPACITY AS CHIEF APPRAISER FOR HARRIS COUNTY APPRAISAL DISTRICT; HARRIS COUNTY APPRAISAL DISTRICT; AND HARRIS COUNTY APPRAISAL DISTRICT REVIEW BOARD, Appellees

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2015-08078**

# O P I N I O N

In this ad valorem tax case, SPX challenges the procedures used to correct the taxable situs of, and assess taxes, penalties, and interest on, its business personal property in tax years 2010–2013. The Harris County Appraisal Review Board ("ARB") decided SPX's protests against it, and in SPX's suit for judicial review and

other relief, the trial court granted the defendants' motion combining a plea to the jurisdiction with a summary judgment on the merits. We conclude that SPX's statutory petition for judicial review against the Harris County Appraisal District ("HCAD") is SPX's exclusive remedy; thus, the trial court did not err in dismissing SPX's statutory claims against Harris County's Chief Appraiser and the ARB and SPX's claims against HCAD for relief outside the Property Tax Code. On the other hand, we conclude that HCAD failed to establish its entitlement to summary judgment on the merits of SPX's statutory claims as to tax years 2010–2012. We accordingly modify the judgment to deny the defendants' motion as it pertains to SPX's statutory petition, asserted against HCAD, for judicial review of the ARB's decisions regarding tax years 2010–2012; affirm the judgment as modified; and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

In tax years 2010 through 2013, SPX had taxable personal property at its business location at 19191 Hempstead Highway in Houston, Texas. HCAD identified the taxable situs of the property within the jurisdiction of Houston Independent School District ("HISD"), Houston Community College ("HCC"), and the City of Houston. SPX paid the taxes assessed on behalf of each of these entities.

### A. The Correction Motion

In late 2013 or early 2014, the Chief Appraiser became aware that the appraisal records or the appraisal roll misidentified three of the entities eligible to tax property at SPX's location. The Chief Appraiser wished to request a change in the taxable situs of the property from that of HISD, HCC, and the City of Houston, to Cypress-Fairbanks Independent School District ("Cy-Fair"), Lone Star College System ("Lone Star"), and Harris County Emergency Services District 9 ("Emergency Services"). On January 9, 2014, the Chief Appraiser sought the

2

correction by filing a motion under section 25.25(c)(3) of the Property Tax Code to correct the property's location, although the property's physical location had not changed.

On February 18, 2014, HCAD wrote to SPX's designated tax agent Kirkwood & Darby, Inc.,

> We recently became aware that a correction is needed to the taxable situs of the above referenced property. . . . . This is to notify you that we have taken action to correct the records by filing a motion for correction with the appraisal review board of Harris County as provided by the Texas Tax Code, Sec. 25.25(c)(3). . . . If you have reason to believe your property did not have taxable situs as listed on [the] back [of this letter], you may file a protest within 30 days of the date of this letter.

Trey B. Cobb of Kirkwood & Darby received the letter but misplaced it and took no action. In April 2014, the appraisal roll was changed as the Chief Appraiser had requested, but no one notified SPX or Kirkwood & Darby at that time.

In May 2014, Cy-Fair's Tax Assessor-Collector sent a bill for SPX's 2011 and 2013 taxes to Kirkwood & Darby. A month later, Cy-Fair's Tax Assessor-Collector sent Kirkwood & Darby a bill for SPX's 2010–2013 taxes, identifying the 2011–2013 taxes as already delinquent. Cobb wrote to HCAD in July 2014, requesting documentation of the changes to the appraisal roll.

## B. The Failure-of-Notice and Tax Protests

After receiving the documents he requested from HCAD, Cobb filed a tax protest on SPX's behalf on September 8, 2014. Among the matters protested were that (1) HCAD had obtained the ARB's approval of the correction motion and changed the appraisal records without notice to the taxpayer; (2) the taxing units had never filed a challenge petition, which was their sole means of changing the taxable

3

situs of SPX's property; and (3) even if the change had been proper, the newly assessed taxes would not become delinquent until February 1, 2015.

The ARB held separate hearings on the failure-of-notice protests for each of the tax years 2011–2013. As for tax year 2010, the ARB instead set the chief appraiser's correction motion for hearing, though no hearing had been requested and the changes to the appraisal and tax rolls had already been made. As to each hearing, Cobb either personally appeared, submitted a statement, or both.

As to the protest of the 2011 and 2012 tax years, the ARB ruled "that neither the chief appraiser nor the appraisal review board failed to provide or deliver any notice to which the property owner is entitled." The ARB dismissed the 2013 protest on the ground that SPX or its designated representative failed to appear at the hearing.

Two years after the hearing on the Chief Appraiser's correction motion as to tax year 2010, and over a year after SPX filed this suit, the ARB granted the motion and ordered the appraisal rolls corrected. The appraisal rolls, however, had been changed over three years earlier without an order from the ARB.

## C.    The Lawsuit

Meanwhile, SPX paid the taxes under protest on December 3, 2014, and filed an appeal by trial de novo in district court. SPX named as defendants Cy-Fair, Cy-Fair's tax assessor-collector, Harris County, the county's tax assessor-collector, HCAD, HCAD's chief appraiser, and the ARB. In addition to invoking the district court's appellate jurisdiction over its protests, SPX pleaded for declaratory, mandamus, and injunctive relief and alleged that both immunity and the requirement to exhaust administrative remedies were waived or were inapplicable due to "actions

4

taken by government officials that are ultra vires of the scope of their authority or involve the failure to perform nondiscretionary duties imposed by statute."

The trial court denied the pleas to the jurisdiction filed by Harris County, Harris County's tax assessor-collector, Cy-Fair, and Cy-Fair's tax assessor-collector, and those four defendants appealed. *See Piwonka v. SPX Corp.*, No. 14-15-00915-CV, 2017 WL 1181302 (Tex. App.—Houston [14th Dist.] Mar. 30, 2017, pet. denied) (mem. op.). We dismissed Harris County's appeal for want of prosecution and rendered judgment dismissing SPX's claims against the remaining appellants for failure to establish waiver of immunity. *See id.* at *7. SPX later non-suited its claims against Harris County.

On remand, HCAD, Harris County's Chief Appraiser, and the ARB (collectively, "the Appraisal Parties") filed a combined plea to the jurisdiction and motion for summary judgment. Regarding the trial court's appellate jurisdiction over the SPX's administrative protests, they argued that SPX had forfeited the right to a determination of its protests by failing to pay the taxes before the delinquency date and by failing to exhaust its available administrative remedies. Regarding the trial court's original jurisdiction over SPX's claims for mandamus, declaratory, and injunctive relief, the Appraisal Parties argued that SPX had not pleaded an ultra vires exception to the exhaustion-of remedies requirement and that HCAD and the Chief Appraiser had governmental immunity from suit. In arguing for summary judgment on the merits, the Appraisal Parties maintained that (1) they had complied with the Tax Code, (2) SPX received sufficient due process, and (3) SPX had not established a right to mandamus, declaratory, and injunctive relief.

The trial court granted the combined motion without stating the grounds, dismissing all of SPX's claims with prejudice. SPX appeals the ruling.

## II. STANDARD OF REVIEW

Whether a court has subject-matter jurisdiction is a question of law that is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). We review the trial court's ruling on a plea to the jurisdiction de novo. *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). Parties may submit evidence supporting or opposing the plea, which we review applying under the same standard applicable to a traditional motion for summary judgment. *Id.* (citing *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016)). We take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Sampson*, 500 S.W.3d at 384. If the relevant evidence fails to raise a fact question on the jurisdictional issue, the court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228. But if the evidence creates a fact question regarding the jurisdictional issue, then the trial court must deny the plea to the jurisdiction and allow the factfinder to resolve the issue. *Id.* at 227–28. This case also presents questions of statutory construction, which, like pleas to the jurisdiction and summary judgments, we also review de novo. *Chambers-Liberty Ctys. Navigation Dist.*, 575 S.W.3d at 345.

## III. GOVERNING LAW

Before appraisal records are approved by the appraisal review board, an appraisal district's chief appraiser can submit written recommendations to the appraisal review board for corrections to the records. *Id.* § 41.10. If the board approves the recommended correction and it will not result in an increase in the tax liability of a property owner, the board may make the correction by written order. *Id.* § 41.10.

A property owner is entitled to appeal an order of the appraisal review board determining a regular protest, a late-notice protest, or a correction motion under section 25.25. Act of May 9, 2013, 83d Leg., R.S., ch. 161, § 19.005, 2013 TEX. GEN. LAWS 622, 689 (amended 2019). The appeal is brought by filing a petition for review in district court against the appraisal district; the petition may not be brought against the appraisal review board. TEX. TAX CODE ANN. § 42.21(b). With exceptions inapplicable here, a property owner who fails to pay the taxes on the property before the delinquency date forfeits the right to proceed to a final determination of the appeal. *Id*. § 42.08.

Having established some context for the parties' arguments, we turn to the arguments themselves. Before a court may address the merits of a case, it must have jurisdiction over the subject matter and the parties. *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994). Because "a court's jurisdiction is determined claim by claim,"[1] we will address each of SPX's claims, reviewing for each the trial court's presumed finding of jurisdiction over the subject matter and over each defendant. To the extent the trial court lacked jurisdiction, we will affirm the judgment without reviewing the merits of the claim against a given defendant. In those instances in which the trial court had such jurisdiction, we will review the trial court's grant of summary judgment on the merits.

## IV. SPX'S APPEAL OF THE ARB ORDERS

We begin with SPX's appeal of the ARB's rulings, starting with the trial court's jurisdiction. If the trial court's dismissal of the claims cannot be affirmed on

---

[1] *Pike v. Tex. EMC Mgmt., LLC*, No. 17-0557, __S.W.3d__, 2020 WL 3405812, at *6 n.7 (Tex. June 19, 2020).

7

jurisdictional grounds, we will next consider whether the Appraisal Parties conclusively established the right to summary judgment.

## A.    Jurisdiction over the Claims

The Appraisal Parties maintain that the trial court lacks jurisdiction to review the ARB's rulings because (1) SPX forfeited the right to review by failing to pay the disputed taxes before the delinquency date, and (2) SPX failed to exhaust administrative remedies.

### 1.    *Failure to pay the disputed taxes before the delinquency date*

A property owner's right to a final determination of a protest or an appeal is waived if the taxes at issue are not paid before the delinquency date. TEX. TAX CODE ANN. § 42.08. The delinquency date varies depending on when bills for the disputed taxes were mailed and on which statute applies to the calculation. Normally, the tax assessor mails the tax bills in the autumn of the tax year,[2] and with certain exceptions, the taxes are delinquent if not paid before February 1st of the year following the year in which the taxes were imposed. *Id*. § 31.02(a).

There are several circumstances in which the February 1st delinquency date can be postponed. If a tax bill is mailed after January 10th, then the property owner would have less than twenty-one days to pay the taxes before they become delinquent under the general rule fixing February 1st as the delinquency date. In that circumstance, the delinquency date is postponed to first day of the next month that will provide at least twenty-one days after the date of mailing for the payment of taxes. *Id*. § 31.04(a). But if a tax bill includes taxes for prior years because the property was omitted from the taxing unit's tax roll, the legislature has given property owners at least 180 days before the taxes become delinquent, regardless of

---

[2] *See* TEX. TAX CODE ANN. § 31.01(a).

when the tax bill is mailed:

> If a tax bill is mailed that includes taxes for one or more preceding tax years because the property was erroneously omitted from the tax roll in those tax years, the delinquency date provided by Section 31.02 is postponed to February 1 of the first year that will provide a period of at least 180 days after the date the tax bill is mailed in which to pay the taxes before they become delinquent.

*Id.* § 31.04(a-1).

### a.    Section 31.04(a-1) controls the delinquency date.

On this record, the dates on which tax bills were mailed for the tax years at issue are supported either by uncontroverted evidence or by no evidence. The evidence establishes that Cy-Fair's tax assessor-collector billed SPX for 2011 and 2013 taxes on the first two days of May 2014, and billed SPX for 2010–2013 taxes on June 5, 2014.[3] The Appraisal Parties admit that no bills for taxes owed to Lone Star or Emergency Services for tax years 2011–2013 were ever mailed. The Appraisal Parties assert that, at an unknown date, Harris County's tax assessor-collector mailed a bill for 2010 taxes owed to Lone Star and Emergency Services, but no evidence supports the assertion.[4]

---

[3] The Appraisal Parties incorrectly refer to the bills on behalf of taxing entities that had not previously assessed taxes against SPX's property in a given tax year as "supplemental bills." A "supplemental bill" is one in which the property owner is charged with taxes in addition to the taxes the property owner has already paid to the same taxing unit for that tax year. *See id.* § 26.15(e). A tax roll is specific to a given taxing unit, *see id.* § 26.15(a), so if no taxes have yet been paid to that taxing entity for tax year billed, then the bill is not "supplemental." Because SPX had not previously been assessed, billed, or paid taxes to Cy-Fair for tax years 2010–2013, the bills sent to SPX in May and June 2014 were not "supplemental" tax bills.

[4] The Appraisal Parties stated only, "The parties did not appear to dispute the timing of this bill" in the earlier appeal in this case. But in that appeal, as here, Harris County's tax assessor-collector conceded that the record did not show any date on which such a bill was sent. There accordingly was, and is, no evidence of a bill date for SPX to dispute. We noted in the earlier appeal that "the delinquency date . . . utilized by" Harris County's tax assessor-collector was August 1, 2014, *see Piwonka*, 2017 WL 1181302, at *2, but the choice of that date remains unexplained. We cannot infer a bill date from the tax assessor-collector's choice of a delinquency

9

The taxes assessed by Cy-Fair for each of the years 2010–2013 would normally have been billed in the autumn of each of those years, with a delinquency date of February 1 of the succeeding year. But the bills for tax years 2010–2013 from Cy-Fair's tax assessor-collector were mailed in May and June of 2014. Because the bills "include[d] taxes for one or more preceding tax years because the property was erroneously omitted from the tax roll in those years," the delinquency date was postponed to "February 1 of the first year that will provide a period of at least 180 days after the date the tax bill is mailed in which to pay the taxes before they become delinquent." *Id.* § 31.04(a-1). The delinquency date for all four years was therefore February 1, 2015. SPX paid the taxes in December 2014, well before the delinquency date.

### b. Section 31.04(a) does not apply.

Without addressing section 31.04(a-1), the Appraisal Parties assert that section 31.04(a) controls, because that subsection applies "[i]f a tax bill is mailed after January 10." But we must construe statutes and related provisions as a whole. *In re Panchakarla*, 602 S.W.3d 536, 540 (Tex. 2020) (orig. proceeding) (per curiam). Such an interpretation would render section 31.04(a-1) meaningless, because if a tax bill includes taxes for one or more preceding tax years in which the property was erroneously omitted from the tax roll, then the bill was necessarily mailed after January 10, and subsection (a) would always apply to the exclusion of subsection (a-1).

---

date, because under the applicable standard of review, we must draw all inferences and resolve any doubts in SPX's favor.

### c.       Section 41.4115(a) does not apply.

The Appraisal Parties alternatively maintain that because SPX protested the failure to receive required notices, the delinquency date is determined by Texas Tax Code section 41.4115(a):

> The pendency of a protest under Section 41.411 [i.e., protest of failure to give notice] does not affect the delinquency date for the taxes on the property subject to the protest. However, that delinquency date applies only to the amount of taxes required to be paid under Subsection (b) and, for purposes of Subsection (b), that delinquency date is postponed to the 125th day after the date one or more taxing units first delivered written notice of the taxes due on the property, as determined by the appraisal review board at a hearing under Section 41.44(c-3).

*Id.* § 41.4115(a). This section cannot apply because the ARB made no determination of the date on which one or more taxing units first delivered written notice of the taxes due on the property; thus, there is no determination from the ARB from which to calculate a delinquency date under this provision.

The Appraisal Parties instead point out that SPX's tax representative attested that he received from SPX a forwarded a bill for the disputed taxes on June 11, 2014. Based on that statement, the Appraisal Parties contend that the delinquency date was 125 days later, on October 14, 2014. This argument, however, is not supported by the terms of the provision on which they rely. Section 41.4115(a) uses an ARB determination, and only an ARB determination, in calculating a delinquency date.

Even if the ARB had made such a determination, this provision still would be inapplicable. Section 31.04(a-1) determines the delinquency date when a bill includes taxes for preceding tax years in which the property was erroneously omitted from the tax roll, but the language of section 41.44 demonstrates that section 41.4115(a) is used in a different circumstance, that is, it extends the delinquency date of taxes that already were delinquent when the taxpayer protested the late notice:

11

(c)    A property owner who files [a late-notice protest] is entitled to a hearing and determination of the protest if the property owner files the notice prior to the date the taxes on the property to which the notice applies become delinquent. . . .

. . .

(c-3)  Notwithstanding Subsection (c), a property owner who files a [late-notice protest] on or after the date the taxes on the property to which the notice applies become delinquent, but not later than the 125th day after the property owner, in the protest filed, claims to have first received written notice of the taxes in question, is entitled to a hearing solely on the issue of whether one or more taxing units timely delivered a tax bill. If at the hearing the appraisal review board determines that all of the taxing units failed to timely deliver a tax bill, the board shall determine the date on which at least one taxing unit first delivered written notice of the taxes in question, and for the purposes of this section the delinquency date is postponed to the 125th day after that date.

TEX. TAX CODE ANN. § 41.44(c), (c-3). Thus, if a property owner files a protest of late notice after the taxes have become delinquent, then the delinquency date can be extended to the 125th day after the property owner claims to have first received written notice of the taxes in question. Those provisions are inapplicable here, where SPX filed its protest after the taxes for prior years were billed, but before the taxes became delinquent. Because SPX filed its protests before February 1, 2015, the ARB was not required to, and did not, determine when a taxing unit first delivered written notice of the taxes.

We conclude that SPX did not forfeit its right to a final determination of its protests and of its appeal by failing to pay the disputed taxes before the delinquency date; thus, the judgment cannot be affirmed on this basis.

12

### 2.    *Failure to exhaust administrative remedies*

The Appraisal Parties argue that SPX failed to exhaust administrative remedies in that it failed to protest the Notice of Pending Corrections that was delivered in February 2014. As to the 2013 tax year, the Appraisal Parties additionally assert that SPX failed to appear at the hearing on its protest.

#### a.    **SPX was not required to protest the Notice of Pending Corrections.**

According to the Appraisal Parties, SPX failed to exhaust its administrative remedies because it did not protest, within thirty days of delivery of the Notice of Pending Corrections, the Chief Appraiser's motion under section 25.25(c)(3) to correct the location of SPX's property. We disagree.

The filing of a motion to correct a property's location under section 25.25(c)(3), without more, is not an action subject to protest. *See id.* § 41.41(a).[5] A property owner is entitled to protest inclusion of the owner's property on the appraisal records, but the property was already included in the appraisal records;[6] simply filing the motion did not change that.

A property owner also can protest "identification of the taxing units in which the owner's property is taxable in the case of the appraisal district's appraisal roll."[7] SPX had no need to file such a protest, because when the Chief Appraiser filed the motion, HCAD's appraisal roll did not identify Cy-Fair, Lone Star, or Emergency Services as taxing units in which SPX's property was taxable. It was the Chief Appraiser who wished to change that, not SPX.

---

[5] *See also* Section IV.C.2.a, *infra*.

[6] *See* TEX. TAX CODE ANN. § 41.41(a)(3).

[7] *Id.* § 41.41(a)(6).

13

There also is a "catch-all" provision under which a property owner may protest "any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner."[8] But the mere filing of the motion under section 25.25(c)(3) did not adversely affect SPX, because the Property Tax Code does not authorize the Chief Appraiser to act on the motion absent a written order from the ARB directing the corrections to be made. The ARB issued no written order directing any such correction until 2017, when it granted the motion only as to tax year 2010.

Despite the absence of a written order directing the Chief Appraiser to change the identification of the taxing units under which SPX's property was taxable in tax years 2010–2013, the Chief Appraiser changed the appraisal records on April 11, 2014. After the ARB approved the changes, the changes became part of the appraisal roll, and SPX was entitled to protest them.[9] But SPX had no notice of the change. It learned that the appraisal roll had, in fact, been erroneously altered only when Cy-Fair began to bill SPX for taxes, penalties, and interest. SPX timely filed its protest after Cy-Fair's assessor-collector delivered bills for previous years in which SPX's property had been omitted from the tax roll. Thereafter, all that remained for SPX to exhaust its administrative remedies was for it to offer evidence at the hearings on its protest and obtain the ARB's ruling.

### b. SPX waived any challenge to its failure to appear at the hearing of the 2013 protest.

In property-tax cases, and with limited exceptions, "judicial review of administrative orders is not available unless all administrative remedies have been

---

[8] *Id.* § 41.41(a)(9).

[9] *Id.* § 41.41(a)(6) (a property owner is entitled to protest "identification of the taxing units in which the owner's property is taxable *in the case of the appraisal district's appraisal roll*") (emphasis added).

pursued to the fullest extent." *Webb Cnty. Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 954 (Tex. 1990). A property owner may offer evidence by affidavit without personally appearing at the hearing. Act of August 10, 1981, 67th Leg., 1st C.S., ch. 13, § 138, sec. 41.45(b), 1981 TEX. GEN. LAWS 117, 171 (amended 2017). SPX offered evidence through an affidavit at the hearing on tax year 2010, and through Cobb's live appearance at the hearing on tax years 2011 and 2012. No one personally appeared on SPX's behalf at the hearing on tax year 2013, but Cobb submitted a statement sworn before a notary public; however, the affidavit does not bear the notary's seal. *Cf.* TEX. GOV'T CODE ANN. § 312.011(1) (defining "affidavit" as "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office."). The ARB treated the absence of the notary's seal on the statement offered in connection with the 2013 protest as a failure to appear and dismissed the protest.

SPX has not argued—at the administrative level, in the trial court, or on appeal—that the ARB erred in treating this formal defect as a failure to appear. We therefore consider any such challenge waived. *See* TEX. R. APP. P. 38.1(i). Thus, as to the trial court's dismissal of SPX's appeal of the ARB ruling on its protest of the 2013 taxes, we affirm the dismissal on the ground that SPX failed to exhaust its administrative remedies. *See New Laredo Hotel*, 792 S.W.2d at 954–55 (trial court properly dismissed suit for judicial review of tax protest where taxpayer failed to appear at the protest hearing personally, by representative, or by affidavit).

### c. SPX exhausted its administrative remedies regarding the corrections to the appraisal roll for tax years 2010–2012.

At the hearing on the protest of the 2010 appraisal-roll correction, Cobb submitted argument and evidence on SPX's behalf through an affidavit, which was

accepted by the ARB. At the hearings on protests of the 2011 and 2012 corrections, Cobb appeared in person. The ARB ruled against SPX in each of these protests; thus, no further relief was available to SPX at the administrative level.

We accordingly conclude the Appraisal Parties did not establish that SPX failed to exhaust its administrative remedies as to the corrections to tax years 2010–2012. The Appraisal Parties' plea to the jurisdiction as to those years therefore could not have been properly granted on this basis.

## B. Jurisdiction over the Parties

The Property Tax Code specifically authorizes review of the type of ARB decisions at issue in this case through a petition for review filed against the appraisal district. *See* TEX. TAX CODE ANN. § 42.21(b). Thus, the trial court's judgment dismissing SPX's claims against HCAD cannot be affirmed on the ground that the appraisal district has governmental immunity from such claims. On the other hand, the Property Tax Code does not authorize a petition for judicial review to be brought against the Chief Appraiser, and the Property Tax Code affirmatively bars such a suit against the ARB. *See id.* We accordingly affirm the dismissal of SPX's petition for judicial review of its protests to the extent that SPX has asserted that claim against the Chief Appraiser and the ARB.

## C. Merits of the Summary Judgment in HCAD's Favor for Tax Years 2010–2012

Having established that, as asserted against HCAD, the trial court had jurisdiction to reach the merits of SPX's petition for judicial review of the ARB's rulings as to tax years 2010–2012, we turn now to the merits of the summary-judgment ruling concerning those claims.

16

### 1. Tax year 2010

SPX filed a single document protesting the purported corrections to tax years 2010–2013. According to the Appraisal Parties, the ARB set a hearing on the alleged failure of notice as to each tax year, and as to tax year 2010, proceeded to consider SPX's challenge to the corrections.

The hearing was held on September 3, 2015, but the ARB did not rule on the motion for over two years. It evidently agreed that SPX did not receive a required notice, because it proceeded to consider the correction motion on the merits. On September 5, 2017, the ARB granted the correction motion, holding that the appraisal roll should be changed to show that the property is not taxable by HISD, HCC, or the City of Houston, but is taxable by Cy-Fair, Lone Star and Emergency Services.

The Appraisal Parties moved for summary judgment on the ground that the corrections were made in accordance with the Property Tax Code. SPX responded that a motion under 25.25(c)(3) is not the proper vehicle to change a property's taxable situs. We agree with SPX.

Section 25.25(c)(3) authorizes the ARB, on motion of the chief appraiser, to direct by written order a change in the appraisal roll of any of the five preceding years to correct "the inclusion of property that does not exist in the form or at the location described in the appraisal roll." It is well-established that, as used in this provision, "'location' means the property's physical location." *Harris Cnty. Appraisal Dist. v. ETC Mktg., Ltd.*, 399 S.W.3d 364, 370 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Thus, "to receive a section 25.25(c)(3) correction, the appraisal roll must erroneously reflect 'that a particular form of property exists at a specified location and, in fact, no such property exists at that location.'" *Harris Cnty. Appraisal Dist. v. Tex. E. Transmission Corp.*, 99 S.W.3d 849, 852 (Tex. App.—

17

Houston [14th Dist.] 2003, pet. denied) (quoting *Titanium Metals v. Dall. Cnty. Appraisal Dist.*, 3 S.W.3d 63, 66 (Tex. App.—Dallas 1999, no pet.)).

The Appraisal Parties assert that "location" for purposes of section 25.25(c)(3) means the property's taxable situs. In support of this assertion, they cite two cases, but neither case supports that position. *See, e.g.*, *Curtis C. Gunn, Inc. v. Bexar Cnty. Appraisal Dist.*, 71 S.W.3d 425, 426 (Tex. App.—San Antonio 2002, pet. denied) and *Kellair Aviation Co. v. Travis Cent. Appraisal Dist.*, 99 S.W.3d 704, 708 (Tex. App.—Austin 2003, pet. denied). In each case, an owner of commercial aircraft attempted to use a motion under section 25.25(c)(3) to allocate the aircraft's market value among various taxing jurisdictions, and in both cases, courts rejected the attempt because section 25.25(c)(3) does not authorize a party to challenge the extent to which business personal property located in a particular jurisdiction is taxable in that jurisdiction. *See Curtis C. Gunn*, 71 S.W.3d at 429 ("Broadly construing 'location' to permit a challenge under section 25.25(c)(3) to the allocation of the appraised value would be contrary to the legislative scheme."); *Kellair*, 99 S.W.3d at 708 (same). This strategy failed because a successful motion under section 25.25(c)(3) "requires that the property not exist at the location indicated on the appraisal roll." *Kellair*, 99 S.W.3d at 708.

It is undisputed that the property's location at all relevant times was 19191 Hempstead Highway in Houston, Texas, and the Chief Appraiser's motion did not seek to change that. The motion instead sought to change the appraisal roll's identification of the jurisdictions in which property at that location was taxed.[10] A motion under section 25.25(c)(3) cannot be granted on that basis.

---

[10] As SPX correctly points out, the failure to identify a particular taxing unit as one in which property is taxable could have been addressed by a challenge petition filed by the taxing unit before the appraisal review board. Act of May 22, 1999, 76th Leg., R.S., ch. 631, § 10, sec.

Because the Appraisal Parties failed to establish their right to change the property's taxable situs retroactively through a motion to correct the property's location, which had not changed, we reverse the portion of the judgment dismissing with prejudice SPX's appeal of the order granting the section 25.25(c)(3) motion as to tax year 2010.[11]

## 2. *Tax years 2011 and 2012*

The ARB reached a somewhat different result concerning SPX's challenge to the 2011 and 2012 corrections motions, instead concluding that "neither the chief appraiser nor the appraisal review board failed to provide or deliver any notice to which the property owner is entitled." Because the ARB concluded that SPX received all the notices it was entitled to receive, the ARB did not reach the merits of SPX's protests of the 2011 and 2012 corrections.

Where a failure of notice is alleged, the governing law is as follows:

> A property owner who establishes that the owner [paid the disputed taxes before the applicable delinquency date] is entitled to a final determination of the court . . . of the protest under Section 41.411 of the failure of the chief appraiser or appraisal review board to provide or deliver a notice to which the property owner is entitled, and, if failure to provide or deliver the notice is established, of a protest made by the property owner on any other grounds of protest authorized by this title relating to the property to which the notice applies.[12]

---

41.03(a), 1999 TEX. GEN. LAWS 3191, 3196 (amended 2019). It is undisputed that no such challenge petition was filed.

[11] Because SPX did not move for summary judgment on its claims in the trial court, the trial court could not render judgment in its favor, and we cannot grant SPX's request that we render judgment in its favor on appeal. *See* TEX. R. APP. P. 43.3(a) (when reversing a judgment, the appellate court "must render the judgment that the trial court should have rendered" unless remand is necessary).

[12] *See* Act of May 9, 2013, 83d Leg., R.S., ch. 161, § 19.005, 2013 TEX. GEN. LAWS 622, 689 (amended 2019).

Thus, the trial court may have granted the Appraisal Parties summary judgment in the belief that the Appraisal Parties delivered all of the notices that SPX was entitled to receive. Alternatively, the trial court may have found that there was a failure of notice, and after considering the ground of SPX's protests, determined that the Appraisal Parties conclusively established that SPX's challenges to the 2010–2012 corrections were without merit. We consider each of these alternatives in turn.

### a.  The Appraisal Parties failed to establish delivery of required notices.

The Appraisal Parties argued in the trial court that SPX received the notice to which it was entitled because the Chief Appraiser sent a "Notice of Pending Correction" to SPX's tax representative on February 18, 2014. The letter stated,

> We recently became aware that a correction is needed to the taxable situs of the above referenced property.
>
> . . .
>
> This is to notify you that we have taken action to correct the records by filing a motion for correction with the appraisal review board of Harris County as provided by the Texas Tax Code, Sec. 25.25(c)(3). This action may affect your tax liability.
>
> THE PROPOSED CORRECTIONS ARE LISTED ON THE BACK OF THIS LETTER.
>
> If you have reason to believe your property did not have [the] taxable situs as listed on [the] back, you may file a protest within 30 days of the date of this letter. . . .

The letter purported to place the burden on SPX to protest proposed corrections, and in relying on the letter to satisfy the applicable notice requirements, the Appraisal Parties treat this as a correct statement of law. But, SPX had no such obligation. At the time of these events, Texas Tax Code section 25.25(e) provided,

> If the chief appraiser and the property owner do not agree to the correction before the 15th day after the date the motion is filed, a party bringing a motion under Subsection (c) . . . is entitled on request to a

20

hearing on and a determination of the motion by the appraisal review board. . . . The chief appraiser, the property owner, and each taxing unit are entitled to present evidence and argument at the hearing and to receive written notice of the board's determination of the motion.[13]

As the movant, it was the Chief Appraiser's burden either to obtain the property owner's agreement to the motion or to set the motion for hearing and determination by the ARB.[14] The Chief Appraiser did neither.

The Appraisal Parties deny that the Chief Appraiser was required to take further action to place the motion before the ARB. They instead argue that because the statute says the movant is entitled "on request" to a hearing and determination of the motion by the ARB, a hearing was optional, and that they were entitled to treat the motion as unopposed in the absence of a protest.

But we must construe a statute in a way that avoids rendering any word or provision meaningless. *See Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 164 (Tex. 2016). We cannot consider statutory provisions in isolation but must read the statute as a whole. *See In re Mem'l Hermann Hosp. Sys*., 464 S.W.3d 686, 701 (Tex. 2015) (orig. proceeding). If an unprotested motion under section 25.25(c)(3) was treated as unopposed, there would be no reason to condition the movant's right to a hearing and determination on the movant's failure to obtain the nonmovant's agreement within a prescribed time. In addition, there would be no evidence on which the ARB could determine a motion to correct the description of a property's form or physical location—which is all that this subsection addresses—absent an opportunity to present evidence. Thus, a movant who waives the right to

---

[13] Act of May 25, 2011, 82d Leg., R.S., ch. 793, § 1, sec. 25.25(e), 2011 TEX. GEN. LAWS 1830, 1830 (amended 2017); Act of May 25, 2011, 82d Leg., R.S., ch. 771, § 6, sec. 25.25(e), 2011 TEX. GEN. LAWS 1796, 1799 (amended 2017).

[14] *See id*.

21

have the ARB hear the motion also waives the right to have the ARB decide the motion.[15]

We conclude that the letter notifying SPX that the Chief Appraiser had filed a motion under section 25.25(c)(3) in an attempt to change the property's taxable situs for the four preceding years did not trigger a duty for SPX to take any action, for in the absence of SPX's agreement to the change or a request by the Chief Appraiser for the ARB to hear and determine the motion, the Property Tax Code did not authorize the Chief Appraiser to make the sought-after corrections. Rather, the statute authorized the Chief Appraiser to correct the appraisal roll only after the ARB issued a written order directing the corrections to be made. *See, e.g.*, TEX. TAX CODE ANN. § 41.01(a)(4) (the ARB must "act on motions to correct appraisal rolls under section 25.25); *id.* § 41.02 ("After making a determination or decision under Section 41.01, the appraisal review board shall by written order direct the chief appraiser to correct or change the appraisal records or the appraisal roll to conform the appraisal records or the appraisal roll to the board's determination or decision."); *id.* § 41.08 ("The chief appraiser shall make the . . . corrections of the appraisal records ordered by the appraisal review board as provided by this subchapter."). The ARB issued such a written order only as to the 2010 tax year—more than three years after the appraisal roll or appraisal records had been changed.

It is possible that the trial court concluded that even though the Appraisal Parties failed to establish that the Chief Appraiser or the ARB provided SPX with the notices to which SPX was entitled, summary judgment was nevertheless

---

[15] Although we reject the Appraisal Parties' position that the Chief Appraiser was entitled to have the ARB determine the motion without either a hearing or SPX's agreement to the motion, their argument suffers from an additional flaw in that there is no evidence that, after failing to obtain SPX's agreement to the motion within fifteen days, the Chief Appraiser requested an ARB determination, even without a hearing.

warranted on the ground that the appraisal rolls for tax years 2010–2012 were appropriately changed. But, for the same reason that the Appraisal Parties failed to establish their right to summary judgment as to the correction of the 2010 appraisal roll, they also failed to establish their right to summary judgment as to the correction of the 2011 and 2012 appraisal rolls. Because the Appraisal Parties failed to establish that they followed the procedures laid down in the Property Tax Code, and because, as discussed above, the property's physical location had not changed, they are not entitled to summary judgment on SPX's petition for review regarding tax years 2010–2012. We accordingly reverse the trial court's grant of summary judgment as to SPX's statutory claims for judicial review of the ARB's rulings on SPX's protests as to tax years 2010–2012.

## V. SPX'S ADDITIONAL CLAIMS FOR
## MANDAMUS, INJUNCTIVE, AND DECLARATORY RELIEF

In addition to the judicial review authorized by the Property Tax Code, SPX also pleaded for declaratory,[16] mandamus,[17] and injunctive relief.[18] But where, as here, the Property Tax Code authorizes a particular ground of protest, then the Code's procedures are the property owner's exclusive means of adjudicating that ground as a basis for tax relief. *See Townsend v. Montgomery Cent. Appraisal Dist.*,

---

[16] SPX pleaded for declarations that

a. the relevant statutes do not permit [the Chief Appraiser], HCAD, and the ARB . . . to make changes to prior year appraisal records and appraisal rolls without the taxing units first exhausting their administrative remedies in those years;

b. the relevant statutes do not allow the approval of changes to the appraisal records that increase the property owner's liability without notice and a hearing;

c. the relevant statutes make these 2010–2013 changes void *ab initio* and any payments are not voluntary and should be refunded;

d. the relevant statutes do not allow the assessment of penalty and interest prior to notice and hearing and the property [sic] application of the delinquency statutes;

e. the relevant statutes do not permit [the Chief Appraiser] to hold *ex parte* communications with the ARB and/or its members without notice and a hearing; and

f. the relevant statutes as applied to SPX by the various Defendant[s] in this case violate the due process and equal protection clauses of the Texas Constitution.

[17] SPX pleaded for a writ of mandamus directing the various defendants to "void the assessments on the Property for tax years 2010 to 2013 inclusive, and refund all *ad valorem* taxes paid to Harris County and Cy-Fair ISD on the Properties for the tax years 2010 to 2013 inclusive, plus interest as allowed by law," or alternatively, directing the various defendants to "void the assessment of penalty and interest on the Property for tax years 2010 to 2013 inclusive."

[18] SPX pleaded for a permanent injunction

a. restraining the Defendants from exceeding the scope of their authority as declared by this Court;

b. restraining the Defendants from collection of the invalid assessments (including penalties and interest); and

c. restraining the Defendants from allowing the taxing units to avoid exhausting their administrative remedies (e.g.[,] via a challenge petition).

24

No. 14-14-00103-CV, 2015 WL 971313, at *4 (Tex. App.—Houston [14th Dist.] Mar. 3, 2015, no pet.) (mem. op.) (citing TEX. TAX. CODE ANN. § 42.09(a)).

SPX protested the acts that adversely affected it on grounds authorized by the Property Tax Code, and as to three of the four tax years at issue, exhausted its administrative remedies. The Property Tax Code authorizes a taxpayer who successfully appeals the ARB determination of its protest to obtain a refund, with interest, of taxes paid under protest,[19] and as we explained in the earlier appeal in this case, "SPX is not entitled to redundant remedies." *Piwonka*, 2017 WL 1181302, at *5. Then, as now, SPX's requests for declaratory, mandamus, and injunctive relief are either "encompassed in the grounds of its protest" or "based upon the outcome of its petition for review." *See id.*

We therefore conclude that, on this record, any remedy available to SPX must be sought through judicial review as provided by the Property Tax Code and that the Appraisal Parties remain immune from suit on other bases. *See, e.g.*, *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (per curiam) (requiring adherence to the Property Tax Code's administrative framework when taxpayer seeks to set aside tax assessments but not when asserting purely constitutional challenges); *Sullivan v. Sheridan Hills Dev. L.P.*, No. 14-15-00630-CV, 2017 WL 1719170, at *6–7 (Tex. App.—Houston [14th Dist.] May 2, 2017, pet. denied) (mem. op.) (trial court lacked jurisdiction over suit seeking a refund of penalties and interest via requests for mandamus and declaratory relief); *see also Pat Walker & Co. v. Johnson*, 623 S.W.2d 306, 310 (Tex. 1981) (orig. proceeding) ("Mandamus will not lie to give a party relief which could otherwise be obtained through a clear and adequate remedy at law."); *Schneider v. Williamson Cent. Appraisal Dist.*, No.

---

[19] *See* TEX. TAX CODE ANN. § 42.43.

03-16-00781-CV, 2017 WL 2417836, at *2 (Tex. App.—Austin May 31, 2017, pet. denied) (mem. op.) ("[T]rial courts do not have jurisdiction over claims for declaratory and injunctive relief in ad valorem tax disputes, including those based on alleged constitutional violations."); *Parra Furniture & Appliance Ctr., Inc. v. Cameron Appraisal Dist.*, No. 13-09-00211-CV, 2010 WL 672882, at *4 (Tex. App.–Corpus Christi–Edinburg Feb. 25, 2010, no pet.) (mem. op.) (non-statutory claims and those for injunctive relief fall outside of relief of chapter 42 of the Property Tax Code and are barred by immunity); *Brazoria Cty. Appraisal Dist. v. Notlef, Inc.*, 721 S.W.2d 391, 393 (Tex. App.—Corpus Christi 1986, no writ) (holding that claims for injunctive relief seeking to enjoin illegal taxing procedures are prohibited by the comprehensive scheme of the Property Tax Code). We accordingly affirm the trial court's dismissal of these non-statutory claims.

## VI. CONCLUSION

We modify the trial court's judgment to deny the Appraisal Parties' plea to the jurisdiction and motion for summary judgment as applied to SPX's suit against HCAD for review of the ARB determinations of SPX's protests of tax years 2010–2012. As modified, we affirm the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.


/s/    Tracy Christopher
       Justice


Panel consists of Justices Christopher, Wise, and Zimmerer.